[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 3763
This is an appeal by the plaintiffs from an assessment of damages by the defendant for the taking of a portion of their property, together with certain rights on portions of the remaining land of the plaintiffs. The taking is shown on a map entitled: "TOWN OF BLOOMFIELD MAP SHOWING LAND ACQUIRED FROM RHEAL J. BOUCHARD, ET AL BY THE STATE OF CONNECTICUT RECONSTRUCTION OF CONN. ROUTE 218 SCALE 1'=40' OCT. 1989 ROBERT W. GUBALA TRANSPORTATION CHIEF ENGINEER — BUREAU OF HIGHWAYS." A copy of the taking map, revised to January 15, 1991, was introduced into evidence by agreement as Exhibit A. A description of the taking is attached to the complaint.
The parties stipulated that the date of the taking by the defendant was July 16, 1991, and that damages as assessed by the defendant in the amount of $99,000 were deposited by the defendant with the clerk of the superior court and have been withdrawn by the plaintiffs.
The defendant found the taking necessary for the layout, alteration, extension, widening, change of grade or improvement of Connecticut Route 218, which is also known as Cottage Grove Road. The project was designed to alleviate traffic problems on Cottage Grove Road.
The Town of Bloomfield lies north of Hartford and west of Windsor. It is within easy reach of major north/south and east/west highways. It contains a mix of residential, commercial and industrial areas.
The subject property is in the southeast section of the Town of Bloomfield. It lies on the south side of Cottage Grove Road to the west of the intersection of Granby Street with Cottage Grove Road. To the west of the subject property along Cottage Grove Road is the large Copaco Shopping Center.
The subject property is at street grade and level. Before the take, it contained about 2.1 acres and had frontage of 188.37 feet on Cottage Grove Road. It extended to the south a distance of something less than 500 feet. The property was in the R-10 zone to a depth CT Page 3764 of 200 feet south of Cottage Grove Road and in the I-1 zone to the south of the R-10 zone. A paved driveway of about 90 feet in length ran from Cottage Grove Road south to an amesite parking lot which had 19 or 20 marked parking slots. This parking lot lies in front of a one story building which was constructed in 1970 as a veterinary hospital. There is another parking area to the east of the veterinary hospital building which is used by employees. Other buildings are a two family dwelling, a three car garage and a shed. There are exterior, fenced dog runs to the rear of the hospital building. There is a chain link fence around the sides and along the rear of the subject property. It is well landscaped and has a number of mature trees. There is a grass island in the center of the parking lot on which before the taking there were two pole lights and a flag pole. None of the buildings has been affected by the taking.
The take consisted of 0.402 of an acre, more or less, at the northerly end of the subject property and across its entire width. Also acquired were rights to construct a driveway over 0.103 of an acre, more or less, and to grade within an area of 0.003 of an acre, more or less. The taking eliminated the long driveway into the subject premises and four of the delineated parking spaces. A new driveway of about 16 feet in length was constructed and the grass island was made somewhat smaller. In addition to several thousand square feet of lawn and amesite paving, other improvements within the taking area included two lights and light poles, fencing, a sign which was relocated and eleven mature trees.
After the take, the subject property contained about 1.698 acres. The highest and best use, both before and after the taking, was as a veterinary hospital.
The plaintiff called Frederick Hesketh, a consulting engineer and land surveyor, as a witness. Hesketh was familiar with the subject property and its vicinity and had reviewed the construction drawings. He testified that before the take Cottage Grove Road was a two-way roadway and that construction by the defendant widened it so that there would be two lanes and a shoulder in each direction separated by an island. CT Page 3765 Traffic westbound on Cottage Drive Road will no longer be able to turn left and enter subject property directly but will have to proceed to the traffic light at the Copaco Shopping Center to the west where a left turn arrow will permit a turn to the eastbound lane. Traffic leaving the subject property will have to turn right and proceed easterly on Cottage Grove Road. To enter the westbound lane, it will be necessary to drive to the traffic light at Granby Street where a left turn arrow will permit a turn to the westbound lane. The driveway into the subject property will be substantially shorter and will no longer permit vehicles to stack up as they leave the premises waiting to enter the highway. Four parking spaces are eliminated and a vehicle backing out of the space at the northwest corner of the parking lot would block the driveway.
Peter R. Marsele, a qualified real estate appraiser, was called by the plaintiffs as an expert witness. Marsele testified that the Zoning Board of Appeals had granted necessary variances in 1969 so that the plaintiffs' predecessors could provide access to their hospital through the R-10 zone and permit parking of up to 20 vehicles on the premises and use them as a veterinary hospital. At that time, there was no requirement for site plan approval for parking in front of the building in the I-1 zone. The zoning regulations now require a site plan and special permit for parking between the street line and a structure in an Industrial zone. Marsele opined that the variance obtained in 1969 would still permit access and parking in the R-10 zone, but that a site plan and special permit would be new required in order to replace the lost parking spaces. He had no doubt that the Planning and Zoning Commission would grant the required permission. Marsele used the market comparison approach to value in estimating the value of the subject property before and after the take. He found three properties in Bloomfield which he used as comparable sales, two of them zoned Professional Office and the other zoned Business. He opined that a veterinary hospital is a business use. Marsele evaluated the land portion of the subject property as a business use property. He computed the fair market value of the 2.1 acres at $7.00 per square foot, or $640,000. He evaluated the improvements, not including the buildings, CT Page 3766 at $93,000. He opined that the total value, excluding the buildings, was $733,000 before the take. He said that after the take, the shortened driveway will make ingress and egress more difficult. He also opined that the plaintiffs will be able to redesign the parking in order to recover the four lost spaces and that the Planning and Zoning Commission will grant the necessary site plan approval and permission. He thought that a site in which there was an ingress and egress hazard would not be approved, but that there was sufficient land to redesign the entrance if necessary. After the take the subject property contained 1.698 acres, more or less. Marsele found no severance damage to the buildings, but he concluded that the remaining portion of the subject property was reduced in value by the need to obtain new site plan approval, by the difficulty caused by the shortened driveway in entry and departure, by the change to Cottage Grove Road permitting access to and from the eastbound lane only, and by the reduction to 16 from 20 parking spaces. He used the same comparable sales and computed the fair market value of the remaining 1.698 acres at $6.00 per square foot, or $444,000. He evaluated the improvements which remained after the take at $70,000. He estimated the total value, not including buildings, at $514,000 after the take. He concluded that the damages sustained were $219,000.
The defendant called Francis E. Bisson, a qualified real estate appraiser, as an expert witness. He concluded that the buildings on the subject property were not affected by the take. He counted only 19 parking slots before the take, but agreed that the taking eliminated four spaces. He opined that the taking had not caused any severance damages to the remaining property, although he conceded that he was not familiar with traffic problems. Bisson also used the sales comparison approach to estimate the value of the subject property. He found three sales of vacant land in the I-1 zone in Bloomfield which he considered to be comparable. He used the same sales before and after the take and after adjustments concluded that the subject property had a fair market value before and after the take of $3.50 per square foot. He opined that the subject property contained 1.93 acres before the take computed its fair market value at $294,248. Bisson added the value of the CT Page 3767 improvements removed from the taking area at $26,437 for a total value before the take of $320,685. He opined that after the take the subject property contained 1.528 acres which he evaluated at $3.50 per square foot. He computed the fair market value after the take at $232,960. The former Bloomfield Town Engineer provided a redesign of the parking facilities and estimated the cost of reconstruction to provide an additional four spaces at $11,200. Bisson subtracted this cost to cure from his estimated fair market value of the subject property after the take of $232,960 to arrive at an after take value of $221,760. He computed damages at $98,925 which he rounded to $99,000.
The loss of the four parking spaces can be remedied because there is sufficient land on the subject property to permit a redesign of the parking areas. The plan provided by the former Town Engineer is attached to Bisson's appraisal report. That proposed plan, of course, may not be acceptable. The configuration shown would make it difficult for some parked cars to back out of spaces. Even if accepted, the estimated costs do not include anything for the necessary preparation of an application for approval of a site plan.
While it is true that cars can no longer line up in the driveway to turn onto Cottage Grove Road, the fact that vehicles can enter and leave only by turning right has made the entryway safer and outweighs any disadvantage caused by the lost ability to stack cars. Neither appraiser considered that the rights to grade and to construct a driveway resulted in damage.
The duty of a referee in an appeal from an award of damages for the acquisition of property by eminent domain is to reach his own conclusion of value by weighing the opinions of the appraisers and other expert witnesses and the claims of the parties in light of all of the circumstances and of his own knowledge of the elements affecting value.
Having seen the property and given due consideration to the testimony of all of the witnesses and to all of the evidence, and relying on my own knowledge of the elements establishing value, I have CT Page 3768 concluded that the damages sustained by the plaintiffs were $147,500. Judgment may enter for the plaintiffs for the further sum of $48,500 in addition to the sum of $99,000 which was deposited by the defendant, with interest on said further sum of $48,500 from the date of taking to the date of payment, together with costs.
George D. Stoughton State Trial Referee